EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
MONICA E. TAIT (Cal. Bar No. 157311)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2931
     Facsimile: (213) 894-6269
     E-mail:   Monica.Tait@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 07-1402-SJO |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; EXHIBITS |
| v. | |
| JEREMIAH MOSHER, et al., | Sentencing Date: Dec. 12, 2016<br>Time: 9:00 a.m.<br>Location: Courtroom of the |
| Defendants. | Hon. S. James Otero |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Monica E. Tait, hereby files its sentencing position and response to the presentence report as to defendant Jeremiah Mosher.

This Response is based upon the attached memorandum of points and authorities and Exhibits, its under seal submission of victim data, the files and records in this case, and such further evidence and argument as the Court may permit.

```
Dated: November 28, 2016         Respectfully submitted,

                                 EILEEN M. DECKER
                                 United States Attorney

                                 LAWRENCE S. MIDDLETON
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                         /s/
                                 MONICA E. TAIT
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA
```

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Jeremiah Mosher ("defendant" or "Mosher") appears for sentencing on his plea to count one, conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 371.  The parties and the PSR are in agreement that the offense level for this defendant is 21. The government recommends a 5-level downward <u>Booker</u> variance for this defendant for the reasons stated below, and asks that the court impose a sentence of 21 months' imprisonment, 3 years supervised release, and an order of $450,374.15 in restitution.

**II.  FACTS**

Defendant pled guilty to one count of conspiracy, in violation of Title 18, United States Code, Section 371.  Defendant's conviction is based on his participation in a fraudulent telemarketing operation based in Montreal, Quebec, Canada, that targeted elderly victims in both Canada and the United States.  In the plea agreement, defendant agreed to the following statement of facts:

> Beginning as early as 2004, and continuing through December 2006, several individuals engaged in a conspiracy to commit mail and wire fraud.  The conspiracy operated as follows: working in a location in Montreal, Quebec, Canada (and later from Vancouver, British Columbia, Canada), defendant agreed with others to defraud victims in the United States and Canada, including victims located in the Central District of California.  Defendant MOSHER knowingly joined this conspiracy as a telemarketer by no later than November 16, 2006, intending to accomplish its objects.  Defendant's co-conspirators obtained "leads," that is, names and contact information of potential victims in the United States and Canada.  Working from the leads, defendant and other telemarketers contacted victims by telephone and mail and falsely informed them that they had won a large sum of money in a sweepstakes or lottery.  As defendant then knew, this representation was false and fraudulent, as there was no sweepstakes or lottery, and the victims called had not won any sum of money from defendant or anyone with whom he was associated.

1    Defendant and other telemarketers falsely told the victims
     that, in order to collect their "winnings," the victims had
2    to pay a sum of money, which the telemarketers falsely
     represented was for taxes, administrative fees, insurance,
3    legal fees, and other expenses that purportedly had to be
     paid before the "winnings" could be sent to the victims. As
4    defendant then knew, these representations were false and
     fraudulent, as the victims had no reason to send money to
5    defendant or anyone with whom he was associated.

6    Defendant and other telemarketers instructed the victims to
     send the money for the purported expenses and fees required
7    for release of their winnings in a variety of ways: (i) By
     wire transfer via Western Union or MoneyGram, either in a
8    name of the victim's choosing, or in a name supplied by the
     telemarketers; (ii) by mail or by commercial carrier, such
9    as Federal Express, to an address supplied by the
     telemarketers; or (iii) by wire transfer from the victim's
10   bank account into a bank account controlled by a co-
     conspirator.  Defendant would receive a percentage of the
11   money he and two other telemarketers (co-defendants Arlene
     Grundy and April Francis Muir) obtained from victims they
12   called.

13   In furtherance of the conspiracy, and to help accomplish
     its objects, defendant MOSHER, together with his co-
14   conspirators, committed and willfully caused others to
     commit the following overt act:  On November 18, 2006,
15   defendant MOSHER contacted co-defendant Tanya Ivanova and
     supplied her with information regarding the pickup of money
16   sent via Western Union by victim A.F.

17   During the time defendant was a member of the conspiracy,
     more than 10 victims of the conspiracy paid more than
18   $315,000 to the co-conspirators as a result of the
     fraudulent scheme.  The scheme was committed through mass
19   marketing.  Defendant knew or should have known that
     victims of the offense were vulnerable victims due to
20   advanced age and susceptibility to reloading.

21  (Plea agreement at pp. 7-9.)

22       As part of the investigation of this matter, the Royal Canadian

23  Mounted Police ("RCMP") conducted a 6-week wiretap of numerous phones

24  connected to multiple participants in the scheme.  Based on the

25  wiretap and RCMP's seizure of search warrant evidence ("Exhibits")

26  from various defendants, its analysis of Western Union and MoneyGram

27  records, and interviews with certain victims, RCMP linked more than

28  100 victims to the entire fraud scheme.  (Exh. 1 (Victim Summary as

                                    2

of November 21, 2007 by Sgt. Yves Leblanc)). The government has submitted separately, under seal, the underlying data prepared by RCMP in accordance with Sgt. Leblanc's discussion in Exhibit 1, from which the PSR amounts (set forth at PSR pp. 19-21) were derived, itemizing each loss by each victim. See GOVERNMENT'S FILING OF LOSS ANALYSIS LISTING VICTIMS, DATES OF LOSSES, AND AMOUNTS LOST IN CONNECTINO WITH SENTENCING, docket no. 589.[1] To compute loss (and restitution) for defendant Mosher only, the government has extracted from the under seal data only those victims and only those amounts paid on or after defendant joined the conspiracy on or about November 16, 2006. Thus, only the post-November 16, 2006 victims and amounts appear in defendant's PSR.

Conversations with the defendant and others were recorded during the wiretap which indicate that defendant participated in the fraud scheme for about a month until the RCMP's search warrants effectively halted the scheme. (Exh. 2 at pp. 1-11 (wiretap summaries concerning MOSHER).) Defendant directly participated in fraudulent transactions/attempted transactions involving about 9 identified victims in the United States and Canada. (Id. at pp. 1-10 (connecting calls concerning defendant to identified victims at PSR pp. 19-21, as well as victims investigators were unable to

---

[1] Docket no. 589 was filed under seal in connection with defendant Adrien Stephenson's recent sentencing, but was served on defendant Mosher's counsel as well. The victims and transactions on the government's Under seal docket no. 589 include transactions and victims for which the parties have agreed defendant is not responsible (because they occurred outside of the time defendant was a member of the conspiracy). The victim list at PSR pp. 19-21 is limited to the victims and transactions during the time defendant has agreed he was a member of the criminal conspiracy.

3

identify)).[2]  As his plea agreement admits, defendant teamed with other telemarketers, and "would receive a percentage of the money he and two other telemarketers (co-defendants Arlene Grundy and April Francis Muir) obtained from victims they called."  (Plea agreement, dkt. 578 at 8; Exh. 2 at 11 (session 2506 on November 16, 2006, discussion of this arrangement with April Muir).)

### III. SENTENCING GUIDELINES CALCULATIONS

The parties have agreed that the following calculations, which are consistent with the PSR and the plea agreement's factual basis, apply to this case:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2))] |
| Specific Offense Characteristics | | |
| Loss between $250,001 and $550,000 | +12 | [U.S.S.G. § 2B1.1(b)(1)(G)] |
| 10 or more victims, and/or offense committed through mass marketing | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)(i),(ii)] |
| Substantial part of fraud scheme committed from outside the United States | +2 | [U.S.S.G. § 2B1.1(b)(10)(B)] |
| Adjustments Vulnerable Victims | +2 | [U.S.S.G. § 3A1.1(b)(1)] |
| <u>Acceptance of Responsibility</u> | <u>-3</u> | [U.S.S.G. § 3E1.1] |
| Total Offense Level | 21 | |

---

[2] The accompanying wiretap summaries concern calls on John Bellini's and Tanya Ivanova's phone lines; RCMP did not record defendant's own phone, so the total number of victims he successfully solicited is unknown.

4

**IV. SENTENCING FACTORS**

The government believes that an evaluation of the factors set forth in 18 U.S.C. § 3553(a) demonstrates why a sentence of 21 months is appropriate, reflecting a variance of 5 levels from the advisory guidelines sentence in this matter. The government below addresses the most notable of the § 3553(a) factors as applied to this defendant.

### A. The nature and circumstances of the offense and characteristics of the defendant

Defendant was on the front lines of the fraudulent organization: he was a telemarketer who directly lied to victims to persuade them to part with their money. As the Court well knows, the scheme preyed on the elderly and infirm, causing substantial financial and emotional harm to these elders, as shown by the victim impact statements previously filed in this case, which are applicable to the entire scheme and are incorporated by this reference into this Sentencing Position. (Dkt. no. 462-3 (victim impact statements). The victims included people suffering from Alzheimer's disease and dementia; the crime left victims too poor to remain in their own homes; defendants took money a pregnant mother of eight had saved for her newborn; they took an elderly couple's life and retirement savings, leaving them broke and without money to buy food after paying bills; they caused a man to question his sanity, leading to hospitalization for his mental problems; and several victims were repeatedly victimized. Based on all of the above, the nature of the offense was undeniably serious, and is a substantial factor supporting the recommended sentence.

5

**B.   The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

A 21-month sentence is appropriate to a person in defendant's role.  A shorter sentence would be unjust given defendant's role as a telemarketer working with two others, and given the more than $400,000 the scheme generated while defendant knowingly participated.

**C.   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

The government's 5-level <u>Booker</u> variance recommendation relates to this factor, due to the history of this specific case.

Defendant is an average-culpability telemarketer, only because he was involved for a relatively short period of time.  He participated in the scheme for about a month.

Recently, this Court has sentenced several of similarly-culpable telemarketers in the scheme to below-guidelines sentences:

> -Arlene Grundy, with whom defendant worked, at offense level 27 received a 24-month sentence.  Her offense level is greater because she was sentenced before the November 2015 change in the sentencing guidelines (which affects the loss and number of victims offense characteristics), and she was responsible for additional loss.[3]

> -April Muir, with whom defendant also worked, at offense level 27 received an 18-month sentence.  Her offense level was the same as Grundy's for the same reasons.  At the sentencing hearing, this Court appeared to have been persuaded by defense

---

[3]  The offense levels described herein for the other defendants are based on the undersigned's review of the plea agreement stipulations and the parties' sentencing positions.

6

      arguments (contested by the government) that Muir was involved in the scheme for only a month, likely accounting for the difference in their sentences.

      -Lori Kofi Mensah at offense level 25 received a 24-month sentence. His offense level was higher than defendant's for the same reasons as Grundy's; it differed from Grundy's because he was responsible for less loss.

A 5-level Booker variance for defendant (effectively, to level 16) would yield an advisory guidelines sentence of 21-27 Months, the same effective range at which defendants Grundy and Mensah were sentenced, and slightly above the effective level at which Muir was sentenced. The government believes defendant is comparable in culpability to Grundy, Muir, and Mensah, particularly since he teamed with Grundy and Muir and shared in the proceeds of the deals they worked. Defendant is more culpable than Tanya Ivanova and Adrien Stephenson, who each received sentences of 12 months and one day. In contrasted to Ivanova (ringleader John Bellini's assistant) and Stephenson (a crooked MoneyGram agent), defendant was on the phone directly lying to victims. Moreover, unlike defendant, Ivanova was more like a pawn in the scheme, had no authority over anyone, and did not realize at first that she was involved in a scam. Defendant, by contrast, was a seasoned telemarketer brought in to work with Muir and Grundy to produce greater sales.[4]

Moreover, a 21-month sentence for defendant is about two-thirds the sentence this Court imposed on telemarketer George Chryssanthopoulos (36 months), and less than a quarter of the

---

[4] Defendant's conduct is not deserving of any aggravating role enhancement.

7

sentence this Court imposed on the highly culpable telemarketer Jeffrey Jacobson and ringleader Bellini (who received 68- and 87-month sentences, respectively, for their wire fraud convictions).[5] These differences are appropriate given all these defendants' higher (or much higher) levels of culpability and longer involvement in the scheme, while still providing just punishment for the nature of defendant's offense.  Taking in all the sentences imposed so far in this case, a 21-month sentence for this defendant avoids unwarranted sentencing disparity.

**V.   CONCLUSION**

For the foregoing reasons, the government asks this court to sentence defendant to a term of incarceration of 21 months.  In addition, the Court should impose 3 years supervised release, a $100 special assessment, and an order of $450,374.15 in restitution.

Dated: November 28, 2016            Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


            /s/ Monica E. Tait
MONICA E. TAIT
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[5] As the Court is aware, Bellini's 87-month sentence was a reduced sentence due to his substantial downward departure for cooperation.  Similarly, Alexander Andriopoulous, the very first defendant who surrendered even before extradition proceedings, received a similarly substantial departure for his assistance in the case (which was linked to the extradition of all the other defendants)_and received probation.  For these defendants, any sentencing disparity relating to these defendants is warranted, not unwarranted, because defendant Stephenson did not cooperate.  18 U.S.C. § 3553(a)(6).